UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 07-180-GWU

BARRY BORDERS,                                                      PLAINTIFF,

VS.                           **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                DEFENDANT.

## INTRODUCTION

Barry Borders brought this action to obtain judicial review of an unfavorable administrative decision on his application for Disability Insurance Benefits (DIB). The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

In the Sixth Circuit, the Step Three severity regulation has been held to be a de minimis hurdle in the disability determination process.  Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986).  An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience."  Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985).  Essentially, the severity requirements may be used to weed out claims that are "totally groundless."  Id., n.1.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the

contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

<u>Duncan v. Secretary of Health and Human Services</u>, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  <u>Harris v. Secretary of Health and Human Services</u>, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.

Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on

strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Borders, a 48-year-old former construction equipment operator, welder and construction/coal truck driver with a high school education, suffered from impairments related to degenerative disc disease, headaches, hypertension, and obesity. (Tr. 18, 27). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that

he retained the residual functional capacity to perform a restricted range of light level work. (Tr. 24, 27). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 27-28). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 28).

After review of the evidence presented, the undersigned concludes that the administrative decision is not supported by substantial evidence. The ALJ erred in evaluating Borders's mental condition. However, the current record also does not mandate an immediate award of DIB. Therefore, the court must grant the plaintiff's summary judgment motion, in so far as such relief is achieved, and deny that of the defendant.

The ALJ erred in finding that Borders's mental problems did not constitute a "severe" mental impairment. (Tr. 23). Dr. Loey Kousa, the plaintiff's treating family physician, noted problems with depression and prescribed the anti-depressant Lexapro. (Tr. 196). The claimant was referred to the Mountain Comprehensive Care Center for treatment of his mental problems. (Tr. 435). Dr. Kousa opined that Borders's ability would be "poor or none" in such areas as following work rules, relating to co-workers, dealing with the public, using judgment, interacting with supervisors, dealing with work stresses, functioning independently, and maintaining attention and concentration. (Tr. 209). These are very serious

mental restrictions.  Dr. Kousa was the claimant's family doctor who primarily treated the patient for physical problems and not a mental health professional.  Nevertheless, the doctor did provide treatment for the claimant's mental problems by prescribing medication and did refer him to a mental health treatment facility in order to obtain care from a mental health specialist.  Even if Dr. Kousa's opinion is not fully binding on the issue of the plaintiff's mental health, he clearly indicated the existence of a "severe" mental impairment and his opinion does not support the ALJ's findings.

Treatment records from the Mountain Comprehensive Care Center reveal that Dr. James Dumas, a staff psychiatrist, diagnosed an adjustment disorder with depressed mood.  (Tr. 442).  Dr. Dumas rated the plaintiff's Global Assessment of Functioning (GAF) at 60.[1]  (Id.).  Such a GAF suggests the existence of "moderate" psychological symptoms according to the American Psychiatric Association's <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision), p. 34.  While the physician did not identify specific mental limitations, this opinion also at least suggests the existence of a "severe" mental impairment.  Therefore, this opinion does not support the administrative decision.

---

[1] Upon intake, a staff clinician initially rated the plaintiff's GAF at 61 to 69, suggesting the existence of "mild" psychological symptoms.  (Tr. 438).

Psychologist Phil Pack examined Borders and diagnosed a major depression with psychotic features. (Tr. 415). Pack opined that the plaintiff's mental problems would impose a 15 percent overall impairment which was noted to be "Class 2" impairment rating on the scales of the AMA's Guides to the Evaluation of Permanent Impairment, Fifth Edition. (Tr. 416-417). This "Class 2" rating was noted to apply to such areas of mental functioning as activities of daily living, social functioning, concentration and adaptation. (Tr. 416). Such restrictions appear to impose more than a "slight abnormality" on the claimant's ability to function in a work setting and, so, would meet the requirements of a "severe" impairment under Farris, 773 F.2d at 88. Therefore, this opinion also strongly supports the existence of a "severe" mental impairment and is incompatible with the administrative findings.

Psychologist Edward Stodola, a non-examining medical reviewer, opined that Borders's mental problems did not constitute a "severe" mental impairment. (Tr. 395). The ALJ relied upon this opinion in determining that the claimant's mental problems were not "severe." (Tr. 23). An ALJ may rely upon the opinion of an non-examining source over that an examiner when the non-examiner clearly states the reasons for his differing opinion. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). In the present action, Stodola saw the record in September of 2004. (Tr. 395). He had no opportunity to see and comment upon the opinion of Pack, an examiner who evaluated the plaintiff in October of 2004 (Tr. 410) nor did he see the

treatment records from the Mountain Comprehensive Care Center which were dated between December, 2005 and March, 2006. (Tr. 427-445). Under these circumstances, the ALJ could not rely upon Stodola to offset the evidence of record from the treating and examining sources. The ALJ should at least have obtained the opinion of a medical advisor who had seen the entire record. Therefore, a remand of the action for further consideration is required.

Based on the <u>current</u> record, the court finds no error with regard to the ALJ's evaluation of Borders's physical condition. Dr. Kousa identified extremely severe physical limitations on a July, 2004 assessment. (Tr. 374-377). The ALJ noted a number of reasons why this assessment was not entitled to superior weight, including the lack of objective clinical and laboratory findings contained in the physician's own treatment records and the opinions of other treating and examining sources. (Tr. 26). Far less severe physical impairment was reported by such examining sources as Dr. Kenneth Graulich (Tr. 344-348), Dr. Timothy Wagner (Tr. 349-353), Dr. Ira Potter (Tr. 363-370), and Dr. Joseph Rapier (Tr. 380-385). Far fewer physical restrictions were identified by Parandhamulu Saranga (Tr. 354-362, 371-372) and Dr. John Rawlings (Tr. 386-394), the non-examining medical reviewers. Dr. Leon Ravvin, a neurosurgeon to whom Dr. Kousa referred the claimant for treatment, noted that his problems with lumbar degenerative disc disease were legitimate but did not impose more severe physical restrictions than

...

07-180  Barry Borders

those found by the ALJ. (Tr. 422-426). Under these circumstances, the ALJ could properly reject Dr. Kousa's opinion. Therefore, substantial evidence supports this portion of the administrative decision.

The undersigned concludes that the administrative decision must be reversed and the action remanded to the Commissioner for further consideration of Borders's mental condition. Therefore, the court must grant the plaintiff's summary judgment motion in so far as such relief is achieved and deny that of the defendant. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 9th day of July, 2008.

Signed By:
*G. Wix Unthank*
**United States Senior Judge**